UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TEVIN KOOSMAN | CIVIL ACTION |
| VERSUS | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY | NO. 17-00183-BAJ-EWD |

**THIS ORDER PERTAINS TO THE FOLLOWING CASES:**

| | |
|---|---|
| *Gregory Allen Perkins, et al. v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01228-BAJ-EWD |
| *Jason Armstrong, et al. v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01233-BAJ-EWD |
| *Kristy Poynor, et al. v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01235-BAJ-EWD |
| *Frederick T. Merritt, et al. v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01253-BAJ-EWD |
| *Danny Lee Ferguson, et al. v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01262-BAJ-EWD |
| *Becky Neal v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01264-BAJ-EWD |
| *Phillip James, Jr., et al. v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01265-BAJ-EWD |
| *Laura Bresee, et al. v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01266-BAJ-EWD |
| *Shelia Smith v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01303-BAJ-EWD |
| *Shelia A. Landry v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01308-BAJ-EWD |
| *Richard Jefferson v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01310-BAJ-EWD |
| *Cynthia Grant, et al. v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01314-BAJ-EWD |
| *Martha Louise Duvall v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01477-BAJ-EWD |
| *John Ampim, et al. v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01496-BAJ-EWD |
| *Laura Barton v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01497-BAJ-EWD |
| *Paul Sike v. Liberty Mutual Fire Insurance Company* | 3:17-cv-01498-BAJ-EWD |

**RULING AND ORDER**

Before the Court is Defendant Liberty Mutual Fire Insurance Company's **Motion To Exclude Plaintiffs' Retained Expert, Tommy Tompkins, And Request For Hearing. (Doc. 138).** The Motion is Opposed. (Doc. 145). Defendant has filed a Reply Memorandum. (Doc. 147). The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties. For the following reasons, the Motion is **DENIED.**

## I. Facts

Between August 13 and 15, 2016, the Baton Rouge area suffered extensive rainfall resulting in widespread flooding (hereinafter "Flood"). Hundreds of lawsuits were filed by the owners of homes damaged in the Flood against insurers pursuant to the National Flood Insurance Act of 1968 ("NFIA"). Certain cases were consolidated for discovery purposes because the Court determined the cases presented common questions of law and fact. (Doc. 21; Doc. 34). In these cases, Plaintiffs seek to recover amounts claimed to be owed for losses caused by the Flood.

## II. Legal Standard

Pursuant to Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the preconditions of the rule are met. Defendant's Motion is a Rule 702 challenge based on Tompkins' lack of qualifications and a *Daubert* challenge based on the lack of an adequate factual foundation and his failure to use an accepted methodology. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Defendant also questions whether Tompkins' report meets the requirements of Federal Rule of Civil Procedure 26(a)(2)(B).

When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016). When no hearing is held, however, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id.* "At a minimum, a district court must create a

record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.'" *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the United States Court of Appeals for the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The [Supreme] Court summarized:
>
> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997) (internal citations omitted).

The Supreme Court too has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (cited with approval in *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)). Cases following *Daubert* have expanded on these

factors and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010) (internal citations omitted) (citing *Kumho Tire Co.*, 526 U.S. at 147).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g., Joiner*, 522 U.S. at 138–39 (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert testimony."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v.*

*Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing FED. R. EVID. 702 advisory committee's note to 2000 amendments). Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

No. 02-2565, 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (internal citations omitted) (relying on, among others, *Rock v. Arkansas,* 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

"As one Court of Appeals has stated, trial judges are gatekeepers, not armed guards." 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6268.2 (2d ed. 1987) (citing *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 86 (1st Cir. 1998)); *see also Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363 (W.D.N.Y. 1999) ("[T]rial judges acting as gatekeepers under [*Daubert*] must not assume 'the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul' and thereby usurp 'the ageless role of the jury' in evaluating witness credibility and weight of the evidence.") (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1045 (2d Cir. 1995)).

As the Court in *General Electric Capital Business Asset Funding Corp. v. S.A.S.E. Military Ltd.*, stated, "Experts should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the factfinder." No. SA-03-CA-189-RF, 2004 WL 5495590, at *5 (W.D. Tex. Oct. 21, 2004) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Trinity Med. Servs., L.L.C. v. Merge Healthcare Sols., Inc.*, No. 17-592, 2020 WL 1309892, at *7 (M.D. La. Mar. 19, 2020) (deGravelles, J.).

For purposes of the *Daubert* analysis here, it is also important to note that these cases will be tried to the Court, not a jury. "[S]ince Rule 702 is aimed at protecting jurors from evidence that is unreliable for reasons they may have difficulty understanding, in a bench trial there is greater discretion regarding procedure and even the stringency of gatekeeping." 29 Victor J. Gold, *Federal Practice & Procedure* § 6270 (2d ed. 2020).

> In a bench trial, the principal reason for the Court's gatekeeping function is not implicated, namely to guard against jury confusion which may result from irrelevant and/or unreliable expert opinion testimony. The purpose of the Court's gatekeeping function required by *Daubert* is to ensure that only reliable and relevant expert testimony is presented to the jury. Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury.

*Hunters Run Gun Club, LLC v. Baker*, No. 17-176, 2019 WL 2516876, at *1 (M.D. La. June 18, 2019) (Dick, J) (citations and quotations omitted); *see also Nassri v. Inland Dredging Co.*, No. 11-853, 2013 WL 256747, at *1 (M.D. La Jan. 23, 2013).

Stated another way, "[t]here is less need for the gatekeeper to keep the gate

when the gatekeeper is keeping the gate only for himself." *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005); *see also Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury.")

**III. Discussion**

Defendant moves to exclude Plaintiffs' designated expert, Tommy Tompkins, from testifying. (Doc. 138, p. 2). In a similar case arising out of the Flood, Judge deGravelles issued a Ruling regarding an insurer's nearly identical motion to exclude plaintiffs' expert, Tompkins. (No. 17-CV-01094-JWD-EWD, Doc. 117; Doc. 125). Because Judge deGravelles fully addressed each argument Defendant raises here, the Court adopts Judge deGravelles' reasoning herein. (No. 17-CV-01094-JWD-EWD, Doc. 125).

First, Defendant argues that Tompkins "lacks the requisite experience to assist the trier of fact as to damages, the causation of damages, as well as repairs."[1] (Doc. 138-1, p. 2). Judge deGravelles concluded that Tompkins is sufficiently qualified to testify as a flood claims adjuster because he has 19 years of experience as an insurance adjuster of residential property for various types of losses, including flood, wind, hail, and hurricane damages. (No. 17-CV-01094-JWD-EWD, Doc. 125, p. 17–18). Tompkins has "handled more than 1,500 insurance claims as an inside desk adjuster, and 2,500 claims as an adjuster in the field." (*Id.* at p. 18). The "fact

[1] Judge deGravelles addressed the argument that Tompkins "lacks the requisite expertise to assist the trier of fact as to damages, the causation of damages, as well as repairs." (No. 17-CV-01094-JWD-EWD, Doc. 125, p. 5 (addressing Tompkins' qualifications)).

that he has no hands-on experience in repairing homes or doing general contracting, plumbing or electrical work does not disqualify him." (*Id.*). Rather, the Court will "leave to the [finder of fact] the extent of those qualifications." (*Id.* at p. 17).

Second, Defendant argues that Tompkins' 400 reports are virtually the same, and consist of boilerplate, generalized, formulaic statements and opinions regarding purported errors or deficiencies in the original adjuster's estimate, which Tompkins admits do not apply to the specific case for which the report was generated.[2] (Doc. 138-1, p. 4). Judge deGravelles determined that while "[i]t is true that Tompkins' failure to personally inspect each of the 400 or so properties involved represents data presumably available to him which he did not consider," " this goes to the weight, not admissibility of his testimony." (17-CV-01094-JWD-EWD, Doc. 125, p. 23). Judge deGravelles recognized inconsistencies between Tompkins' reports, deposition testimony, and affidavit, but found that these inconsistencies are not grounds for excluding the testimony altogether. (*Id.* at p. 25). Rather, the inconsistencies will "undoubtedly be the subject of vigorous cross examination at trial and may well have an impact on the credibility of this witness and the weight to be given to his evidence." (*Id.* at p. 24–25).

Third, Defendant argues that Tompkins' proposed testimony is not the product

---

[2] Judge deGravelles addressed the argument that "Tompkins issued some 400 reports which are 'virtually the same, and consist[ ] of boilerplate, generalized, formulaic statements and opinions regarding purported errors or deficiencies in the original adjuster's estimate which ([Tompkins] admits) do not apply to the specific case for which the report was generated.'" (No. 17-CV-01094-JWD-EWD, Doc. 125, p. 5 (addressing the sufficiency of foundation for Tompkins' opinions)).

of reliable principles or methods, and as demonstrated by his cookie-cutter reports, Tompkins has not reliably applied any principles or methods to the facts of any one case.[3] (Doc. 138-1, p. 5). Judge deGravelles found that the alleged "cookie-cutter styled reports" including "boilerplate language" constitutes a matter of weight rather than admissibility and may be explored by Defendant on cross-examination. (17-CV-01094-JWD-EWD, Doc. 125, p. 32).

Fourth, Defendant argues that Tompkins' expert reports are woefully incomplete and fall short of the mandatory disclosure requirements prescribed by Federal Rule of Civil Procedure 26(a)(2)(B) because his reports do not quantify the value of the alleged damages Plaintiff seeks in each individual case.[4] (Doc. 138-1, p. 3, 5). Judge deGravelles stated: "Tompkins' affidavit explains that each paragraph in a given report, although identical in language to that in other reports, applies to that specific property." (17-CV-01094-JWD-EWD, Doc. 125, p. 33). The reports are "sufficiently complete and clear to give adequate notice to [the insurer] regarding [Tompkins'] opinions as to a given property, the facts and data upon which he relied, along with his qualifications, prior testimony and compensation." (*Id.* (citing *Nkansah v. Martinez*, No. 15-646, 2017 WL 2812733, at *8

---

[3] Judge deGravelles addressed the following argument: "Because Tompkins has submitted cookie-cutter styled reports, including boilerplate language that may or may not apply to a given property, there is no evidence that he has reliably applied the principles and methods to the facts of each individual case." (No. 17-CV-01094-JWD-EWD, Doc. 125, p. 7 (addressing Tompkins' methodology)).

[4] Judge deGravelles addressed the following argument: "Because the report does not comply with the completeness requirement of Rule 26(a)(2)(B)(i), Tompkins should not be permitted to testify." (No. 17-CV-01094-JWD-EWD, Doc. 125, p. 7 (addressing the requirements of Rule 26(a)(2)(B)).

(M.D. La. June 28, 2017) ("While the report is bare bones, to say the least, especially when viewed together with her deposition and supplemental affidavit, the opinions in the report can be ascertained."); *Am. Gen. Life Ins. Co. v. Russell*, No. 16-851, 2019 WL 4411819, at *5 (M.D. La. Sept. 16, 2019) ("When the report is combined with the deposition, it is clear that sufficient information has been provided regarding Bacon's opinions, data relied upon and reasons supporting it.")). Ultimately, Judge deGravelles concluded that:

> While inconsistencies between his deposition testimony and his affidavit are apparent and raise issues of credibility and competence, these are matters which go to the weight of his testimony and can be developed during his trial testimony, both on direct and cross examination. This is especially true given the fact that the trial of this matter will be to the bench.

(17-CV-01094-JWD-EWD, Doc. 125, p. 33).

While there are concerns regarding certain aspects of Tompkins' testimony, in the context of a bench trial, "the trial judge is in a unique position to hear the evidence and decide whether to disregard it altogether or to just consider the criticisms of the testimony as relevant to the weight the evidence is ultimately given." *Schmidt v. United States*, No. A-18-CV-00088-DAE, 2019 WL 2090695, at *6 (W.D. Tex. May 10, 2019). Accordingly, and for the reasons previously addressed by Judge deGravelles in response to the insurer's virtually identical arguments, Defendant's Motion is denied. (No. 17-CV-01094-JWD-EWD, Doc. 125).

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendant Hartford Insurance Company of the Midwest's **Motion To Exclude Plaintiffs' Retained Expert, Tommy Tompkins, And Request For Hearing (Doc. 138)** is **DENIED.**

Baton Rouge, Louisiana, this 3rd day of March, 2021

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**